IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOSEPH N. SOUZA,                    )    CIVIL NO. 12-00462 HG-BMK
                                    )
            Plaintiff,              )
                                    )
        vs.                         )
                                    )
KENNETH SILVA; CITY AND COUNTY      )
OF HONOLULU; HONOLULU FIRE          )
DEPARTMENT; JOHN DOES 1-10;         )
DOE PARTNERSHIPS 1-5; DOE           )
CORPORATIONS 1-5; DOE               )
GOVERNMENTAL ENTITIES 1-5,          )
                                    )
            Defendants.             )
                                    )
_____ )


**ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT
(ECF No. 57)**

Plaintiff Joseph N. Souza alleges in the complaint that

his former employer, Defendants Honolulu Fire Department and

the City and County of Honolulu, discriminated against him on

the basis of his disability in violation of the Americans with

Disabilities Act, the Rehabilitation Act, and Hawaii state

statutes.  Plaintiff also alleges he was retaliated against

for filing a worker's compensation claim.  Plaintiff also

seeks relief for intentional infliction of emotional distress.

Defendants Honolulu Fire Department and the City and

County of Honolulu seek summary judgment on all of Plaintiff's

1

claims.  Defendant Kenneth Silva, sued in his official capacity as Fire Chief for the Honolulu Fire Department, moves for summary judgment on the basis that claims against him are duplicative of the claims against the Defendants Honolulu Fire Department and the City and County of Honolulu.  Plaintiff Souza agrees summary judgment is appropriate in favor of Defendant Silva.

Discovery was reopened to allow Plaintiff Souza the opportunity to conduct an additional deposition.  Plaintiff's motion to continue the hearing on Defendants' Amended Motion for Summary Judgment was granted.  An extended briefing schedule was entered into to permit Defendants the chance to amend their Motion and to allow Plaintiff Souza more time to file his Opposition.

Defendants' Amended Motion for Summary Judgment (ECF No. 57) is **GRANTED.**

## PROCEDURAL HISTORY

On July 23, 2012, Plaintiff Joseph N. Souza filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii.  (ECF No. 1-2).

On August 13, 2012, Defendants Kenneth Silva, in his

capacity as Fire Chief of the Honolulu Fire Department, the City and County of Honolulu, and the Honolulu Fire Department removed the state court action to the United States District Court, District of Hawaii. (ECF No. 1).

On January 18, 2013, Plaintiff Souza filed a Motion to Amend the Complaint. (ECF No. 14).

On January 28, 2013, Defendants Silva, the City and County of Honolulu, and the Honolulu Fire Department filed a Statement of No Position as to Plaintiff's Motion to Amend the Complaint. (ECF No. 16).

On January 29, 2013, Plaintiff Souza's Motion to Amend the Complaint was granted. (ECF No. 17).

On February 5, 2013, Plaintiff Souza filed his First Amended Complaint. (ECF No. 18).

On August 3, 2013, Defendants Silva, Honolulu Fire Department, and the City and County of Honolulu filed a Motion for Summary Judgment and a separate Concise Statement of Facts in support. (ECF Nos. 32, 33).

On August 13, 2013, the Parties submitted a Stipulation to Allow Amendment to Defendants' Separate and Concise Statement of Facts and to Continue the Hearing on the Motion. (ECF No. 38).

On August 14, 2013, Plaintiff Souza filed a MOTION TO

3

CONTINUE HEARING ON MOTION FOR SUMMARY JUDGMENT AND TO PERMIT AN EXTENSION OF TIME TO SECURE DISCOVERY TO OPPOSE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. (ECF No. 36).

On September 5, 2013, the Court held a Status Conference. (ECF No. 44). The Court issued a Minute Order striking Defendants' Motion for Summary Judgment (ECF No. 32) and the Concise Statement of Facts (ECF No. 33) without prejudice. Defendants were instructed to comply with Local Rule 7 upon the filing of a Motion. (Id.)

On November 13, 2013, Defendants filed DEFENDANTS HONOLULU FIRE DEPARTMENT AND KENNETH SILVA'S MOTION FOR SUMMARY JUDGMENT AS TO ALL COUNTS IN PLAINTIFF JOSEPH N. SOUZA'S FIRST AMENDED COMPLAINT. (ECF No. 53). Defendants also filed a Concise Statement in Support of the Motion for Summary Judgment. (ECF No. 52).

On November 15, 2013, Plaintiff filed a Motion to Reopen Discovery. (ECF No. 54).

On November 20, 2013, the Court issued a Minute Order striking Defendants' Motion for Summary Judgment (ECF No. 53) and the Concise Statement of Facts (ECF No. 52). (ECF No. 55). Defendants were given leave to file a new Motion for Summary Judgment and Concise Statement of Facts in conformity with Local Rule 56.1 by December 2, 2013. (Id.)

On December 2, 2013, Defendants filed DEFENDANTS HONOLULU FIRE DEPARTMENT AND KENNETH SILVA'S AMENDED MOTION FOR SUMMARY JUDGMENT AS TO ALL COUNTS IN PLAINTIFF JOSEPH N. SOUZA'S FIRST AMENDED COMPLAINT. (ECF No. 57). Defendants also filed a Concise Statement of Facts in Support of the Amended Motion for Summary Judgment. (ECF No. 58).

On December 3, 2013, the Court issued a Briefing Schedule for Defendants' Amended Motion for Summary Judgment. (ECF No. 59).

On December 10, 2013, Plaintiff Souza filed a Motion to Reschedule the Hearing on Defendants' Amended Motion for Summary Judgment. (ECF No. 62). Plaintiff requested additional time to file his Opposition based on his Motion to Reopen Discovery.

On December 12, 2013, the Court granted Plaintiff's Motion to Reschedule the Hearing on Defendants' Amended Motion for Summary Judgment. (ECF No. 63).

On January 27, 2014, the Court held a Status Conference. (ECF No. 69). At the status conference, the Parties requested a new briefing schedule for Defendants' Amended Motion for Summary Judgment following the extended discovery deadline of February 6, 2014. The Court instructed Defendants to file a Notice with the Court by February 27, 2014, as to whether

there were any changes to its Amended Motion for Summary
Judgment (ECF No. 57) after discovery was completed. (ECF No.
69). The Court set the remaining briefing schedule for
Defendants' Amended Motion for Summary Judgment. (<u>Id.</u>)

On February 27, 2014, Defendants filed a Notice that
there were no changes to its Amended Motion for Summary
Judgment. (ECF No. 72).

On March 11, 2014, Plaintiff Souza filed an Opposition to
the Amended Motion for Summary Judgment. (ECF No. 73).
Plaintiff also filed a separate Concise Statement of Facts in
response to Defendants' Concise Statement of Facts. (ECF No.
74).

On March 21, 2014, Defendants filed a Reply. (ECF No.
75).

On March 27, 2014, the Court held a hearing on
Defendants' Amended Motion for Summary Judgment. (ECF No.
76).


**FACTUAL BACKGROUND**

**Defendants' Provisions Regarding a Medical Leave of Absence**

According to the Defendant Honolulu Fire Department's
Policy and Procedures Manual, employees are required to
provide a Physician's Certificate if they are absent from work

for an extended period of time due to injury or illness.
(Def.'s Concise Statement of Facts ("CSF")at ¶ 1, ECF No. 58;
Def.'s Ex. A, Honolulu Fire Department Policy and Procedures
Manual, ECF No. 58-10).

An employee of the Honolulu Fire Department ("HFD") is
also an employee of the City and County of Honolulu ("City and
County").  Section 8-9 of the City and County's Civil Service
Rules requires an employee, who is absent from duty without
proper authorization, be placed on unauthorized leave of
absence without pay ("LWOP") status.  (Def.'s Ex. D, City and
County's Civil Service Rules, ECF No. 58-13).

A City and County employee who is out of work pursuant to
a worker's compensation claim is required to report his injury
status to his supervisor on a regular basis.  (Personnel
Manual, Department of Human Resources, City and County of
Honolulu, Def.'s Ex. C, ECF No. 58-12).

**Defendants' Provisions Regarding Termination for Failure to
Report**

Section 11-4 of the Civil Service Rules allows a City
Department to "terminate or consider...to have resigned" any
employee who does not report to work for fifteen days without
notifying the appropriate authority of the employee's
employment intentions or who "fails to return to work within

7

fifteen calendar days following the expiration of an approved leave of absence." (Def.'s CSF at ¶ 4, ECF No. 58; Def.'s Ex. D, City and County's Civil Service Rules, ECF No. 58-13).

The Personnel Manual also states that failure of an employee to keep his City and County operating department informed of his injury status could result in dismissal for job abandonment. (Def.'s CSF at ¶ 2, ECF No. 58; Def.'s Ex. C, City and County's Personnel Manual, ECF No. 58-12).

**Plaintiff's Injury in February 2010**

On July 3, 1995, Plaintiff Joseph N. Souza ("Plaintiff Souza") was hired as a full-time Fire Fighter recruit by Defendants HFD and City and County. (First Amended Complaint at ¶¶ 5-6, ECF No. 18).

Beginning in 2009, Plaintiff Souza served as a Fire Fighter 2, Chief's Driver-Aide. (Id. at ¶¶ 8-9).

On February 22, 2010, Plaintiff attended a mandatory meeting conducted by HFD Fire Chief, Defendant Kenneth Silva ("Defendant Silva"). (First Amended Complaint at ¶¶ 15, 16). Defendant Silva is alleged to have made misrepresentations to the fire fighters about Plaintiff Souza. (Id. at ¶¶ 14-16).

According to the complaint, a few days after the meeting, the Hawaii Fire Fighters Association sent an email to its

membership making the same misrepresentations. (<u>Id.</u> at ¶ 18).

Plaintiff Souza claims he received numerous threats and harassing phone calls at work, at home, and on his cell phone from fire fighters following the meeting and the email. (<u>Id.</u> at ¶ 19). Plaintiff Souza claims he suffered a mental injury as a result and was diagnosed with an acute stress and adjustment disorder. (Declaration of Joseph N. Souza ("Souza Decl.") at ¶¶ 12-14, ECF No. 74-1).

On March 4, 2010, Plaintiff Souza states he began crying at work due to his mental injury. (<u>Id.</u> at ¶ 13). On the same date, Plaintiff Souza began taking sick leave from work. (<u>Id.</u>; Declaration of Dean Matsukawa ("Matsukawa Decl.") at ¶ 12, ECF No. 58-6). Plaintiff Souza did not return to work at the fire department. (Pla.'s CSF at ¶ 14, ECF No. 74).

**Events Between Plaintiff's Injury and His Termination in October 2011**

On March 26, 2010, Plaintiff Souza informed Defendants that he suffered an injury of "mental stress" when he filed his Worker's Compensation Claim. (Pla.'s Ex. 4, City and County of Honolulu Report of Industrial Injury or Illness, ECF No. 74-7; Matsukawa Decl. at ¶ 13, ECF No. 58-6).

On April 23, 2010, Plaintiff's claim for Worker's Compensation was deferred to the Hawaii State Department of

Labor and Industrial Relations, Disability Compensation Division ("Disability Compensation Division"). (Pla.'s Ex. 5, ECF No. 74-8).

In September and October 2010, Defendants called Plaintiff Souza to request medical certificates to validate his absence from work while his Worker's Compensation Claim was pending. (Declaration of Frank Johnson ("Johnson Decl.") at ¶¶ 7, 9-20 ECF No. 58-5; Declaration of Kenison Tejada ("Tejada Decl.") at ¶¶ 9-46, ECF No. 58-7; Def.'s Ex. B, Telephone Conversation Recording, ECF No. 61).

During the nine month period between March 2010 and November 2010, Plaintiff Souza provided Defendants with four, brief medical certificates from his treating psychologist, Dr. Mary C. Horn, to verify his absence from work. (Def.'s Exs. P, Q, R, S, medical certificates from Dr. Mary Horn, ECF No. 58). The medical certificate dated June 16, 2010, stated:

> This is a letter to confirm that Joseph Souza has been under my care for psychological services since 03/05/10, due to extreme stress from work that began on 2/22/10. He continues to come in regularly and is progressing slowly.

(Def.'s Ex. P, medical certificate from Dr. Mary Horn, ECF No. 58-20). The following three medical certificates were equally brief and expressed the same information. (Def.'s Exs. Q, R, S, medical certificates from Dr. Mary Horn, ECF No. 58).

In November 2010, Defendants notified Plaintiff Souza in writing that the medical certificates that he provided were too infrequent to verify his absence from work. (Def.'s Ex. G, November 16, 2010 Letter from Defendant Silva to Plaintiff Souza, ECF No. 58-15).

On December 7, 2010, the State of Hawaii's Disability Compensation Division issued its decision on Plaintiff Souza's Worker's Compensation Claim. (Def.'s Ex. V, Disability Compensation Division Decision dated December 7, 2010, ECF No. 58-26). The Disability Compensation Division found that Plaintiff Souza was entitled to receive compensation for medical care and services related to his acute stress and adjustment disorder. (Id.)

The Disability Compensation Division did not decide whether Plaintiff Souza was eligible to receive benefits for either a temporary total disability, a permanent disability, or disfigurement. (Id.) The Disability Compensation Division found the issues could not be resolved because of an incomplete record. (Id.) The Disability Compensation Division explained that there was new evidence that Plaintiff Souza was employed at a ukulele factory that was not previously raised by the parties. (Id.) Due to the undeveloped record as to Plaintiff Souza's ability to work,

the Disability Compensation Division held in abeyance its decision with respect to his entitlement to receive benefits for a temporary total disability, a permanent disability, or disfigurement. (Id.)

Defendants HFD and City and County appealed the Disability Compensation Division's order and no decision on the appeal has been issued. (Inouye Decl. at p. 2, ECF No. 58-8; Ex. 11 of Pla.'s Opposition, ECF No. 74-14). The issue of whether Plaintiff Souza is entitled to temporary total disability, permanent disability, or disfigurement benefits remains held in abeyance by the Disability Compensation Division.

Following the Disability Compensation Division's December 2010 decision, Defendants notified Plaintiff Souza in January 2011 that he had not provided sufficiently regular medical certificates to verify his continued absence from work. (Def.'s Ex. H, January 24, 2011 Letter to Plaintiff Souza, ECF No. 58-16).

In response, on February 18, 2011, Plaintiff provided Defendants with another medical certificate from Dr. Mary Horn. (Def.'s Ex. T, medical certificate dated February 11, 2011, ECF No. 58-24). The certificate stated that Dr. Horn was treating Plaintiff Souza for psychological services and

that his treatment was expected to continue indefinitely.
(<u>Id.</u>)

For the five month period between March 2011 and July
2011, Plaintiff did not provide Defendants with any medical
certificates to verify his absence.

In August 2011, Plaintiff Souza gave notice to Defendants
of his injury status when he filed a medical certificate from
Dr. Horn as part of a motion he filed before the Disability
Compensation Division. (Pla.'s Ex. 16 at p. 15, medical
certificate dated August 9, 2011, ECF No. 74-19). The August
2011 medical certificate stated that Plaintiff Souza continued
to receive treatment for a psychiatric disability. (<u>Id.</u>)

On September 1, 2011, and October 5, 2011, Defendants
informed Plaintiff Souza in writing that he had failed to
comply with their requests for regular medical certificates
verifying his absence from work. (Def.'s Exs. I, J,
Defendants' September 1, 2011 and October 5, 2011 Letters to
Plaintiff, ECF No. 58). The September 2011 and October 2011
letters notified Plaintiff Souza that he was in violation of
the City and County's Civil Service Rules. (<u>Id.</u>) Defendants
also notified Plaintiff that his continued absence may be
construed as job abandonment pursuant to the Civil Service
Rules. (<u>Id.</u>)

On October 15, 2011, nineteen months after Plaintiff Souza last reported for work, Plaintiff was terminated on the basis that he had abandoned his job. (Matsukawa Decl. at ¶ 53, ECF No. 58-6).

**Events Following Plaintiff's Termination in October 2011**

Following his termination, Plaintiff Souza sent another medical certificate from Dr. Horn to Defendants. (Def.'s Ex. U, medical certificate dated October 26, 2011, ECF No. 58-25).

On November 3, 2011, Plaintiff Souza filed a grievance with Defendant HFD over his termination, which was denied. (Souza Decl. at ¶ 44, ECF No. 74-1). The Honolulu Fire Fighters Association declined to arbitrate on Plaintiff's behalf. (Declaration of Aaron Lenchanko ("Lenchanko Decl.") at ¶¶ 8, 11, ECF No. 58-4; Def.'s Ex. F, Letter from Lenchanko to Plaintiff Souza, ECF No. 58-14).

According to the complaint, on November 23, 2011, Plaintiff filed a Charge of Discrimination with the Hawaii Civil Rights Commission ("HCRC"), HCRC No. 16342. (First Amended Complaint at ¶ 26, ECF No. 18). Plaintiff also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), EEOC No. 486-2012-00042. (Defendant's Ex. Z, EEOC Letter, dated April 3, 2012, ECF No.

14

58-27).

On or about April 25, 2012, according to the complaint, the EEOC issued a Notice of Right to Sue. (_Id._ ¶ 31).

Plaintiff states in the First Amended Complaint that on May 19, 2012, the HCRC issued a Right to Sue Letter. (_Id._)

On July 23, 2012, Plaintiff filed a Complaint in Hawaii state court. (Ex. A, attached to Defendants' Notice of Removal, ECF No. 1-2). Defendants removed the case to the United States District Court, District of Hawaii, on August 13, 2012. Plaintiff filed a First Amended Complaint.

In his Opposition to the Motion for Summary Judgment, Plaintiff Souza conceded that all claims against Defendant Silva should be treated as claims against the City and County of Honolulu. (Opposition at pp. 8-9, ECF NO. 73.) Plaintiff agrees to summary judgment in favor of Defendant Kenneth Silva.

Plaintiff Souza alleges the following claims against the remaining Defendants Honolulu Fire Department and City and County of Honolulu (hereinafter "Defendants"): (Count I) Disability Discrimination, (Count II) Retaliation for Filing a Worker's Compensation Claim, and (Count III) Intentional Infliction of Emotional Distress.

**STANDARD OF REVIEW**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. <u>Celotex</u>, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.

Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or

denials.  Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut.</u>
<u>Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  When the
non-moving party relies only on its own affidavits to oppose
summary judgment, it cannot rely on conclusory allegations
unsupported by factual data to create an issue of material
fact.  <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir.
1993); <u>see also National Steel Corp. v. Golden Eagle Ins. Co.</u>,
121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

## I.  Count One - Disability Discrimination

Defendants seek summary judgment on Count One, arguing
that Plaintiff cannot establish a prima facie case pursuant to
the Americans with Disabilities Act ("ADA"), the
Rehabilitation Act, and Section 378-2 of the Hawaii Revised
Statutes ("HRS").

Title I of the ADA, 42 U.S.C. § 12112(a), prohibits an
employer from discriminating "against a qualified individual
with a disability because of the disability of such individual
in regard to job application procedures, the hiring,
advancement, or discharge of employees."  The court applies
the burden-shifting analysis derived from <u>McDonnell Douglas</u>
<u>Corp v. Green</u>, 411 U.S. 792 (1973) to claims of discrimination

18

on account of a disability.  <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 49-50 (2003).

The same ADA analysis is applied to claims brought pursuant to the Rehabilitation Act.  <u>Boose v. Tri-County Metro. Transp. Dist. Of Oregon</u>, 587 F.3d 997, 1001 n.5 (9th Cir. 2009) (quoting <u>Zukle v. Regents of Univ. of Cal.</u>, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); <u>see Douglas v. California Dep't of Youth Auth.</u>, 285 F.3d 1226, 1229 n.3 (9th Cir. 2002).

Claims pursuant to HRS § 378-2 are also considered under the same ADA framework.  <u>Beaulieu v. Northrop Grumman Corp.</u>, Civ. Nos. 99-537ACK, 99-538ACK, 161 F.Supp.2d 1135, 1142 (D. Haw. 2000); <u>Vanhorn v. Hana Group, Inc.</u>, Civ No. 12-215JMS-KSC, 2013 WL 5719487 at *5 (D. Haw. Oct. 18, 2013).

Under the burden-shifting analysis, Plaintiff must first establish a prima facie disability discrimination claim.  <u>Raytheon Co.</u>, 540 U.S. at 49 n.3.  Plaintiff must put forth evidence that:

(1)  he is "disabled" within the meaning of the statute;

(2)  he is a "qualified individual," meaning he is able to perform the essential functions of his job, either with or without reasonable accommodations; and

(3)　he suffered an adverse employment action "because

of" his disability.

Hutton v. Elf Atochem North Am., Inc., 273 F.3d 884, 891 (9th

Cir. 2001).

Plaintiff Souza cannot establish the second prong of the

McDonnell Douglas analysis.

**1.　Plaintiff Established a Prima Facie Case that He
Was Disabled**

The ADA defines disability with respect to an individual

as "(A) a physical or mental impairment that substantially

limits one or more of the major life activities of such

individual; (B) a record of such impairment; or (C) being

regarding as having such an impairment."　42 U.S.C. §

12102(1).

Viewing the evidence in a light most favorable to

Plaintiff, Plaintiff can establish the first prong of the

McDonnell Douglas test that he had a disability following the

fire fighters' meeting on February 22, 2010.

In 2008, Congress adopted the ADA Amendments Act,

"reinstating a broad scope of protection to be available under

the ADA" and expressly rejecting the more stringent standards

set forth in Sutton v. United Air Lines, 527 U.S. 471 (1999),

upon which Defendants rely.　Pub. L. No. 110-325, 122 Stat.

3553; see <u>Vanhorn</u>, Civ. No. 12-215JMS-KSC, 2013 WL 5719487 at *6.

"Mental impairment" is defined as as including "[a]ny mental or psychological disorder such as ... emotional or mental illness." 29 C.F.R. § 1620.2(h)(2). Stress and depression can be considered mental impairments rendering a person disabled within the meaning of the ADA. <u>Snead v. Metropolitan Property & Cas. Ins. Co.</u>, 237 F.3d 1080, 1088 (9th Cir. 2001).

There is evidence that Plaintiff had a mental impairment for at least some portion of time following the incident on February 22, 2010. Defendants received notice in March 2010 that Plaintiff Souza suffered from a mental impairment. (Pla.'s Ex. 4., Report of Industrial Injury or Illness, ECF No. 74-7). Plaintiff Souza filed a Worker's Compensation Claim with Defendants claiming he suffered an injury of "mental stress." The Disability Compensation Division issued a decision on Plaintiff's Worker's Compensation Claim in December 2010, concluding Plaintiff suffered from an acute stress and adjustment disorder. (Def.'s Ex. V, ECF No. 58-26).

At various points, Dr. Mary Horn provided medical certificates that Plaintiff Souza submitted to Defendants

stating that he was under her care for "psychological services." (Def.'s Exs. P, Q, R, S, T, ECF No. 58).

The record, viewed in a light most favorable to Plaintiff Souza, demonstrates a prima facie case that Plaintiff was disabled within the meaning of the ADA for some portion of time following the incident on February 22, 2010.

Even if Plaintiff can establish the first prong of the McDonnell Douglas analysis, Plaintiff is unable to demonstrate the second prong of the test. Plaintiff Souza has not provided proof that he was a qualified individual able to perform the essential functions of his position with HFD after he suffered his injury.

### 2. Plaintiff Has Not Put Forth Evidence of a Prima Facie Case that He Was A "Qualified Individual"

The ADA defines "qualified individual" as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. ¶ 12111(8); Nunes v. Wal-Mart, Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999).

The ADA requires that a plaintiff be able to perform the essential functions of his job "with or without reasonable accommodation." 42 U.S.C. § 12111(8).

22

### A. Plaintiff Has Not Shown He Was Able to Perform the Essential Functions of His Position Since March 2010

"An employee who does not come to work cannot perform any of his job functions, essential or otherwise." <u>Samper v. Providence St. Vincent Medical Center</u>, 675 F.3d 1233, 1239 (9th Cir. 2012) (citing <u>Waggoner v. Olin Corp.</u>, 169 F.3d 481, 485 (7th Cir. 1999).

On March 4, 2010, Plaintiff Souza stopped reporting to work. From March 4, 2010 until December 23, 2010, Defendants accommodated Plaintiff Souza by allowing him to take paid sick leave from work. ("Matsukawa Decl." at ¶ 12, 24-29, ECF No. 58-6, Ex. H, ECF No. 58-16).

From December 23, 2010 until January 12, 2011, Defendants accommodated Plaintiff Souza by allowing him to take paid vacation leave from work. (<u>Id.</u>; Pla.'s Ex. 23, Employee Summary Report, ECF No. 74-26).

From January 12, 2011, until Plaintiff Souza was terminated on October 15, 2011, Defendants accommodated Plaintiff Souza by providing him with leave without pay. (Matsukawa Decl. at ¶¶ 37, 50, ECF No. 58-6; Pla.'s Ex. 23, ECF No. 74-26).

Following his injury in March 2010, Plaintiff Souza did

not return to work.  Plaintiff has presented no evidence he
was able to perform the essential functions of his position
since his injury.  <u>Samper</u>, 675 F.3d 1233, 1239.

> **B.    Plaintiff Has Not Shown That He Engaged in
> the Interactive Process with Defendants to
> Determine Reasonable Accommodations to
> Allow Him to Perform the Essential
> Functions of His Position at HFD**

"In general ... it is the responsibility of the
individual to inform the employer that an accommodation is
needed."  29 C.F.R. § 1630, App. at § 1630.9; <u>Summers v.
Teichert & Son, Inc.</u>, 127 F.3d 1150, 1153 (9th Cir. 1997)
(finding that the employer did not fail to accommodate an
employee's disability when he never requested an
accommodation).

The employer has an obligation to engage in an
interactive process with the employee to identify and
implement appropriate reasonable accommodations for an
employee's disability.  <u>Humphrey v. Mem'l Hosps. Ass'n</u>, 239
F.3d 1128, 1137 (9th Cir. 2001); <u>see</u> 29 C.F.R. § 1630.2(O)(3)
(explaining that the interactive process "should identify the
precise limitations resulting from the disability and
potential reasonable accommodations that could overcome those
limitations").

The employee also has a duty to engage in the interactive process.  <u>Allen v. Pacific Bell</u>, 348 F.3d 1113, 1115 (9th Cir. 2003).  "Both sides must communicate directly, exchange essential information, and neither side can delay or obstruct the process."  <u>Barnett v. U.S. Air, Inc.</u>, 228 F.3d 1105, 1114-1115 (9th Cir. 2000), *overruled on other grounds*, <u>535 U.S. 391 (2002)</u>.  Good faith participating in the process is a continuing obligation that may not be exhausted by one effort.  <u>Humphrey</u>, 239 F.3d at 1138.

An employer is only liable for failing to provide reasonable accommodation for an employee's disability when the employer bears responsibility for the breakdown in the interactive process.  <u>Zivkovic v. S. Cal. Edison Co.</u>, 302 F.3d 1080, 1089 (9th Cir. 2002) (citing <u>Beck v. Univ. of Wisconsin Board of Regents</u>, 75 F.3d 1130, 1135 (7th Cir. 1996)).

Defendants attempted to engage in an interactive process with Plaintiff in order to determine the status of his injury while they provided him accommodations.  Plaintiff never requested any reasonable accommodation that would allow him to perform the essential functions of his position at HFD. Plaintiff did not provide Defendants with sufficient information that would have allowed them to continue to accommodate him.

1. **Plaintiff Provided Defendants With Only Four Medical Certificates to Verify His Absence Between March 2010 and December 2010 While His Worker's Compensation Claim Was Pending**

On March 26, 2010, Plaintiff Souza filed a Worker's Compensation Claim with Defendants. (Pla.'s Ex. 4, ECF No. 74-7). The claim form section titled "Describe injury or illness" stated only "Mental Stress." (Id.) Plaintiff did not include any other details about the nature or extent of his injury.

While Plaintiff's Worker's Compensation Claim was pending, Defendants attempted to engage with Plaintiff Souza to obtain information about the nature and extent of his injury. In September and October of 2010, Plaintiff's supervisors called him more than eight times to request information regarding the status of his injury. (Johnson Decl. at ¶¶ 7-8, ECF No. 58-5; Tejada Decl. at ¶¶ 9-46, ECF No. 58-7). Plaintiff's supervisors also asked Plaintiff Souza when he expected he could return to work at HFD. (Id.)

On September 8, 2010, Battalion Chief Kenison Tejada called Plaintiff Souza to request written medical verification of his condition. (Tejada Decl. at ¶ 10, ECF No. 58-7). Two days later, Battalion Chief Tejada called Plaintiff Souza on

his cell phone and on his home phone in an effort to obtain information about Plaintiff Souza's status. (Id. at ¶ 12).

In response to the telephone calls, on September 14, 2010, Plaintiff Souza provided a medical certificate from his treating psychologist, Dr. Mary Horn. (Tejada Decl. at ¶ 15, ECF No. 58-7). The certificate, dated June 16, 2010, was only two sentences and stated:

> This is a letter to confirm that Joseph Souza has been under my care for psychological services since 03/05/10, due to extreme stress from work that began on 2/22/10. He continues to come in regularly and is progressing slowly.

(Def.'s Ex. P, Letter from Mary C. Horn, Psy.D., dated June 16, 2010, ECF No. 58-20). The June 2010 certificate provided to Defendants in September 2010 was more than three months old. It did not identify the precise limitations resulting from Plaintiff's "extreme stress." Dr. Horn did not identify any potential reasonable accommodations that could overcome any of Plaintiff Souza's limitations. The certificate did not provide an expected recovery date.

After receiving the June 2010 document, on September 16, 2010, Battalion Chief Tejada called Plaintiff Souza and informed him that he needed to provide an updated medical certificate that verified whether he was able to work. (Tejada Decl. at ¶ 19).

In response, Plaintiff Souza provided another medical certificate dated September 22, 2010. (Def.'s Ex. Q, ECF No. 58-21). The September 22, 2010 certificate again stated that Plaintiff Souza was receiving psychological services and was progressing slowly. The certificate did not explain the nature of Plaintiff's treatment and did not provide any prognosis. Dr. Horn stated that "ongoing stressors with the case have prevented him from a full recovery." (<u>Id.</u>)

On September 27, 2010, Battalion Chief Tejada called Plaintiff Souza requesting further information about the extent of his injuries and whether he could return to work. (Tejada Decl. at ¶¶ 22-24). Plaintiff Souza indicated that he made medical appointments for the first week of October and promised to obtain the necessary information for Defendants. (<u>Id.</u>) Plaintiff Souza did not contact Battalion Chief Tejada during the first two weeks of October. (<u>Id.</u> at ¶ 25).

On October 12, 13, 14, 15, and 19 of 2010, Battalion Chief Tejada called Plaintiff Souza again requesting updated information about Plaintiff's injury and information about when he would be able to return to his position. (<u>Id.</u> at ¶¶ 26-28).

In response to Defendants' efforts, on October 25, 2010, Plaintiff Souza submitted another medical certificate from Dr.

Horn. (Def.'s Ex. R, ECF No. 58-22). The October 25, 2010 certificate did not provide updated information about Plaintiff's injury. The October certificate was nearly identical to the September 2010 certificate. The certificate failed to provide any date upon which Plaintiff Souza was expected to be able to return to work.

Defendants continued to reach out to Plaintiff by sending him written requests for information about the status of his injury. On November 16, 2010, Defendants sent Plaintiff Souza a letter to inform him that he had failed to abide by his supervisor's instructions to provide current medical certifications to validate his absence from work. (Def.'s Ex. G, ECF No. 58-15). Defendants informed Plaintiff Souza that he was being placed under investigation for insubordination. (Id.)

Plaintiff Souza responded to the letter by providing another medical certificate prepared by Dr. Horn dated November 16, 2010. (Def.'s Ex. S, ECF No. 58-23). The November 16, 2010 certificate contained the same language as the previous certificates and added that Plaintiff Souza's "treatment is expected to continue indefinitely." (Id.)

On December 7, 2010, the State of Hawaii's Disability Compensation Division issued its decision on Plaintiff Souza's

Worker's Compensation Claim.  (Def.'s Ex. V, ECF No. 58-26).

The Disability Compensation Division found that Plaintiff

Souza was entitled to receive compensation for medical care

for his acute stress and adjustment disorder.  (Id.)  The

Disability Compensation Division found that the record was

undeveloped with respect to Plaintiff Souza's eligibility to

receive benefits for either a temporary total disability, a

permanent disability, or disfigurement.  (Id.)  The Disability

Compensation Division explained that there was evidence in the

record that Plaintiff Souza had been working at a ukulele

factory since his injury in February 2010.  (Id.)  The facts

related to Plaintiff Souza's ability to work based on his

employment at the ukulele factory were not sufficiently

developed before the Disability Compensation Division.  The

decision regarding Plaintiff's eligibility for temporary total

disability, permanent disability, or disfigurement benefits

has been held in abeyance by the Disability Compensation

Division and remains undetermined.  (Id.; Exs. 11, 12 of

Pla.'s Opposition, ECF No. 74-14).

> **2.  Plaintiff Provided Defendants With Only Two Medical Certificates to Verify His Absence for the 10 Month Period Between the Disability Compensation Division Decision in December 2010 and His Termination in October 2011**

Following the order issued by the Disability Compensation Division in December 2010, Plaintiff Souza continued to disobey his supervisors' instructions with respect to their requests for information about his injury status and the date he could return to work at HFD. Defendants continued to request regular medical certificates to validate Plaintiff's continued absence from his position at HFD.

A month after the Disability Compensation Division order was issued in December 2010, Defendants sent a letter to Plaintiff, dated January 24, 2011, to inform him that he continued to be deficient in communicating the status of his injury to them. (Silva Decl. at ¶ 25, ECF No. 25). The letter stated: "You are still required to regularly update your supervisor of your leave status and provide medical certifications to validate your continued absence from work." (Def.'s Ex. H, ECF No. 58-16). Defendants also informed Plaintiff that his failure to comply with the notification requirements may result in disciplinary action or separation from his position for job abandonment. (Id.)

One month later, on February 11, 2011, Fire Captain Frank Johnson called Plaintiff Souza. (Def.'s Ex. B, Telephone Conversation Recording, ECF No. 61; Johnson Decl. at ¶¶ 9-20,

ECF No. 58-5). Fire Captain Johnson told Plaintiff Souza that HFD would consider him to have abandoned his job if he did not submit regular medical certificates from his doctor to justify his absence. (Id.) Plaintiff Souza informed Fire Captain Johnson that Dr. Horn told him he did not need to provide the Fire Department with the status of his injury. (Defendant's Ex. B, Telephone Conversation Recording, ECF No. 61; Johnson Decl. at ¶ 16, ECF No. 58-5).

Plaintiff Souza's claim of reliance on Dr. Horn's interpretation of his legal responsibility is refuted by Dr. Horn's own deposition. (Defendant's Ex. CC at p. 49, ECF No. 58-29). Dr. Horn testified that she is not aware of the requirements of each patient's employer for communication so leaves it up to her patients to let her know if they need a doctor's letter or note. (Id.)

Following the conversation with Fire Captain Johnson, Plaintiff Souza provided Defendants with a medical certificate dated February 11, 2011. (Def.'s Ex. T, ECF No. 58-23). The February 2011 certificate contained the same vague information as the November 2011 certificate. The certificate did not provide any information about when Plaintiff Souza was expected to recover or anticipated to return to work. The certificate stated that Plaintiff Souza's treatment with Dr.

Horn was expected to continue indefinitely.

For the following five months between March 2011 and July 2011, Plaintiff Souza did not provide Defendants with any medical certificates to validate his absence from work.

Plaintiff Souza claims that he provided Defendants with another medical certificate in August 2011 when he filed a motion with the Disability Compensation Division regarding his Worker's Compensation Claim. Viewing the evidence in a light most favorable to Plaintiff, Defendants had notice of the August 2011 medical certificate from Dr. Horn. The August 2011 certificate indicated that Plaintiff Souza continued to be under Dr. Horn's care. (Pla.'s Ex. 16 at p. 15, ECF No. 74-19). The certificate stated that Dr. Horn recommended that Plaintiff Souza "carry out daily tasks" including work at his ukulele shop as part of his treatment. (Id.) The August 2011 certificate did not state that Plaintiff Souza could perform the essential functions of his position at the HFD. Dr. Horn also did not provide an expected date that Plaintiff Souza could return to work for Defendants.

On September 1, 2011, Defendants wrote Plaintiff Souza to inform him that he had not provided sufficient medical certificates to verify his absence for the period between February 2011 and September 2011. (Def.'s Ex. I, ECF No. 58-

17).  Defendants also notified Plaintiff Souza that an
employee's failure to return to work within 15 days of a
verified absence could be considered job abandonment pursuant
to the City and County's Civil Service Rules.  (<u>Id.</u>).

On October 5, 2011, Defendants sent Plaintiff Souza
another letter.  (Def.'s Ex. J, ECF No. 58-18).  The letter
asserted that Plaintiff had continued to disregard their
requests for current medical certificates.  (<u>Id.</u>)  The October
5, 2011 letter informed Plaintiff Souza that he was required
to provide HFD with medical certificates regardless of his
Worker's Compensation Claim.  (<u>Id.</u>)  The letter also stated:
"As a result of your failure to comply with our directive to
validate your prolonged absence from the HFD, we will proceed
with the necessary actions to process your resignation from
the HFD in accordance with Section 11-4 of the Civil Service
Rules."  (<u>Id.</u>)

On October 15, 2011, Defendants terminated Plaintiff on
the basis that he had abandoned his position.  (Def.'s CSF at
¶ 30, ECF No. 58).

 The evidence demonstrates that Plaintiff's
communications about the parameters and nature of his injury
offered little information for Defendants to understand the
extent of his disability.  When an employee fails to provide

sufficient medical evidence, the employer has no further duty to engage in the interactive process. <u>Allen v. Pacific Bell</u>, 348 F.3d 1113, 1114-15 (9th Cir. 2003); <u>Templeton v. Neodata Services., Inc.</u>, 162 F.3d 617, 619 (10th Cir. 1998) (stating that the employee's failure to provide medical information precluded her from claiming that the employer failure to provide reasonable accommodations).

Plaintiff Souza's contention that he provided medical documentation when it was requested by his employer fails to recognize the context and tone of Defendant HFD's calls and letters to him. In each instance, the communication informed Plaintiff Souza that he had not complied with the Defendants' policies. Plaintiff Souza's responses to Defendants' requests were terse, infrequent, and lacked specificity as to his medical condition.

Plaintiff Souza provided Defendants with only six, brief medical certificates to verify his more than 18 month absence from work. Defendants repeatedly notified Plaintiff that he had provided insufficient information to verify his absence from work. Defendants notified Plaintiff on multiple occasions that he was in violation of the City and County's Civil Service Rules. Plaintiff has not provided evidence that he complied with Defendants' leave policies. Plaintiff Souza

has not shown that he provided details about the nature and extent of his injury that would have allowed Defendants to determine reasonable accommodations for him to perform the essential functions of his position. <u>Zivkovic</u>, 302 F.3d at 1089; see <u>Steffes v. Stepan Co.</u>, 144 F.3d 1070, 1073 (7th Cir. 1998).

### C. Plaintiff Has Not Shown That He Requested Any Reasonable Accommodation From Defendants

The Ninth Circuit Court of Appeals has recognized that an "[u]npaid medical leave may be a reasonable accommodation under the ADA." <u>Nunes</u>, 164 F.3d at 1247. A medical leave is not a reasonable accommodation when it is indefinite. <u>Dark v. Curry County</u>, 451 F.3d 1078, 1090 (9th Cir. 2008) (citing <u>Taylor v. Pepsi-Cola Co.</u>, 196 F.3d 1106 (10th Cir. 1999)). The Ninth Circuit Court of Appeals has found a medical leave is not a reasonable accommodation when it is for injuries requiring recovery time of unspecified duration where the employee cannot state when and under what conditions he could return to work at all. <u>Dark</u>, 451 F.3d at 1088. It is the plaintiff's burden to establish that a reasonable accommodation is possible. <u>Id.</u>

Plaintiff Souza has not put forth evidence that he

requested any reasonable accommodation that would have allowed him to perform the essential functions of his job. 42 U.S.C. § 12111(8). Defendants accommodated Plaintiff for more than nineteen months following his injury. (Matsukawa Decl. at ¶ 12, 24-29, 37, 50, ECF No. 58-6). Plaintiff has not established that providing him with an indefinite leave of absence would have been reasonable. Plaintiff failed to provide any information as to when he may be expected to return to work, despite Defendants' repeated requests for such information. Larson v. United Natural Foods W. Inc., 518 Fed. App'x 589, 591 (9th Cir. 2013) (finding that the employee's requested "at least six month long" leave of absence so that he "might eventually be" able to return to work is not a reasonable accommodation); Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003) (holding that the employee's request for an indefinite leave of absence is unreasonable as a matter of law). Plaintiff Souza concedes that he never informed Defendants of an anticipated date when he could return to work. (Def.'s CSF at ¶ 34, ECF No. 58).

Plaintiff Souza has failed to produce evidence that a reasonable accommodation was even possible. Zukle v. Regents of Univ. Of Cal., 1966 F.3d 1041, 1047 (9th Cir. 1999). Defendants were not provided with any timeline for Plaintiff's

anticipated recovery that Defendants could attempt to accommodate.  The information that Defendants received from Dr. Horn indicated that Plaintiff would continue to be treated for his mental injury indefinitely.

The record contains evidence that Plaintiff Souza never intended to return to work for Defendants.  Plaintiff told the EEOC investigator that "it was unlikely that [he] would be able to return to work in a fire department environment." (Def.'s Exhibit Z, EEOC Letter dated April 3, 2012, ECF No. 58-27).  Plaintiff Souza also told the medical doctor who examined him for his Worker's Compensation Claim that he "did not wish to pursue employment with HFD."  (Pla.'s Ex. 8 at p. 11, ECF No. 74-11).

Plaintiff Souza has failed to put forth evidence of a prima facie case that he was "a qualified individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of his position.  42 U.S.C. § 12111(8).  Plaintiff Souza cannot establish the second prong of the McDonnell Douglas framework for a disability discrimination cause of action.

Defendants' Amended Motion for Summary Judgment as to Count I is **GRANTED**.

## II. Count Two - Retaliation For Filing a Worker's Compensation Claim

Plaintiff alleges that he was wrongfully terminated for filing a worker's compensation claim in violation of HRS § 378-32(a)(2). HRS § 378-32(a)(2) prohibits terminating an employee on account of a work injury.

The statute provides:

> It shall be unlawful for any employer to suspend, discharge, or discriminate against any of the employer's employees ... [s]olely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing.

> HRS § 378-32(a)(2).

A remedy for wrongful discharge pursuant to HRS § 378-32 is found in HRS § 378-35. The statute allows for an employee to have a hearing before the Hawaii Department of Labor and Industrial Relations to determine the appropriate remedy. HRS § 378-35 provides:

> If the department of labor and industrial relations finds, after a hearing, that an employer has unlawfully suspended, discharged or discriminated against an employee in violation of section 378-32, the department may order the reinstatement, or reinstatement to the prior position, as the case may be, of the employee with or without backpay and may order the payment of backpay without any such reinstatement.

The Hawaii Intermediate Court of Appeals held in <u>Takaki</u>
<u>v. Allied Machinery Corp.</u>, 951 P.2d 507, 514 (Haw. App. 1998)
that a claim for wrongful discharge in violation of public
policy may not be based on work-injury related discharges,
citing <u>Parnar v. Americana Hotels, Inc.</u>, 652 P.2d 625, 631
(Haw. 1982).  The appeals court held that the exclusive remedy
available for termination for a work-related injury is
provided in HRS § 378-35.  <u>Takaki</u>, 951 P.2d at 514.

The Hawaii Supreme Court has emphasized that "absent a
clear expression of legislative intent to the contrary, ... it
is both unnecessary and unwise to permit a judicially created
cause of action ... to be maintained where the policy sought
to be vindicated is already embodied in a statute providing
its own remedy for its violation."  <u>Ross v. Stouffer Hotel,</u>
<u>Co.</u>, 879 P.2d 1037, 1047 (Haw. 1994).

HRS § 378-35 provides for a hearing before the Hawaii
Department of Labor and Industrial Relations.  Plaintiff
Souza's worker's compensation case before the Hawaii
Department of Labor and Industrial Relations remains on appeal
and provides the exclusive remedy for a claim of work-injury
related discharge.

Defendants' Amended Motion for Summary Judgment as to

Count II is **GRANTED**.


### III.      Count Three - Intentional Infliction of Emotional Distress

Pursuant to the Hawaii Workers' Compensation Statute at HRS § 386-5, the workers' compensation benefits provided to an employee on account of a work injury "shall exclude all other liability of the employer to the employee" on account of that injury. Yang v. Abercrombie & Fitch Stores, 284 P.3d 946, 950 (Haw. App. 2012). An exception applies for sexual harassment, sexual assault, and infliction of emotional distress related to a sexual assault or sexual harassment. Id.

The Hawaii Intermediate Court of Appeals explained that the exclusivity provision in HRS § 386-5 bars suit for all intentional torts for a plaintiff's injuries suffered because of his employment. Id. at 954. An intentional tort committed by a co-employee acting in the course and scope of his or her employment may be considered an "accident" under Hawaii Workers' Compensation statutes if the intentional act was directed against the employee because of the employee's employment. Id.

Plaintiff claims his termination "constituted the intentional infliction of emotional distress." (First Amended

Complaint at ¶ 29, ECF No. 18). Just as the plaintiff in

Yang, Plaintiff Souza's intentional tort claim is barred by

the exclusivity provision of HRS § 386-5.

Defendants' Amended Motion for Summary Judgment as to

Count III is **GRANTED**.


**IV. Punitive Damages**

Municipal defendants are generally immune from liability

for punitive damages. City of Newport v. Fact Concerts, Inc.,

453 U.S. 247, 271 (1981) (finding a municipality defendant is

not liable for punitive damages for causes of action brought

pursuant to 42 U.S.C. § 1983).

The United States Supreme Court has held that punitive

damages may not be awarded in private suits brought pursuant

to the ADA or the Rehabilitation Act. Barnes v. Gorman, 536

U.S. 181, 189 (2002); see also Alvarado v. Cajun Operating

Co., 588 F.3d 1261, 1268 (9th Cir. 2009) (finding that

punitive and compensatory damages are not available for ADA

retaliation claims).

In his Opposition, Plaintiff concedes that "42 U.S.C. §

1981a(b)(1) expressly does not provide for recovery of

punitive damages for violation of Title I of the ADA and the

Rehabilitation Act against a government, government agency or

political subdivision." (Plaintiff's Opposition at p. 30, ECF No. 73).

Plaintiff argues that he is entitled to punitive damages pursuant to Hawaii state law. (Id., citing HRS § 368-17(a)). Contrary to Plaintiff's position, the Hawaii Supreme Court has found that punitive damages are not available against the City and County of Honolulu pursuant to Hawaii state law. Lauer v. Y.M.C.A., 557 P.2d 1334, 1341-42 (Haw. 1976).

The Hawaii Supreme Court explained that "public policy dictates the conclusion that the City, as a municipal corporation, should not be held liable for punitive damages. The innocent taxpayers, the intended beneficiary from the public example which the punishment makes of the wrongdoer, should not suffer." Id.; see Matubang v. City and County of Honolulu, CV. Nos. 09-130ACK-KSC, 10-173ACK-KSC, 2010 WL 1850184, *9 (D. Haw. May 7, 2010) (finding the City and County of Honolulu is not liable for punitive damages from claims based in common law or state tort law).

Punitive damages are not available in this case.

Defendants' Amended Motion for Summary Judgment as to Plaintiff's pleading for punitive damages is **GRANTED**.


**CONCLUSION**

43

Defendants' Amended Motion for Summary Judgment (ECF No. 57) is **GRANTED**.

There are no remaining claims or parties herein.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and to close the case.

IT IS SO ORDERED.

DATED: May 29, 2014, Honolulu, Hawaii.



/s/ Helen Gillmor

Helen Gillmor
United States District Judge